IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| MARTHA CHILDRESS, Individually and as Next Friend and Administrator of the Estate of Jason A. Childress, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN GENERAL INSURANCE COMPANY,<br><br>Defendant. | No. 4:11-CV-7<br>Jury Demanded<br><br>Mattice/<br>carter |

## COMPLAINT

Now comes Plaintiff Martha Childress, individually and as next friend of Jason Childress, deceased, and for her Complaint against Defendant Lincoln General Insurance Company ("Lincoln General") states as follows:

### I. Parties and Jurisdiction

1. Martha Childress is a citizen and resident of the Commonwealth of Virginia. She is the widow of Jason Childress, who was also a citizen and resident of the Commonwealth of Virginia, and who died domiciled in Virginia.

2. Defendant Lincoln General is a corporation organized and existing under the laws of the State of Pennsylvania, and having its principal place of business in Pennsylvania. It may be served with process pursuant to Rule 4(b)(1)(B) of the Federal Rules of Civil Procedure and the provisions of Tenn. Code Ann. §§ 56-2-103 and 56-2-503 by service upon the Tennessee Commissioner of Insurance.

3. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332. This suit is entirely between citizens of different states, and the amount in controversy, exclusive of fees and costs, exceeds $75,000.00.

4. This Court has personal jurisdiction of the parties.

5. Venue is proper in this Court, as the events giving rise to the claim occurred in this district and division.

## II. Facts

6. Jason Childress was employed by trucking company Big G Express, Inc. ("Big G"). He drove a tractor trailer truck for Big G in several states, including Tennessee and Virginia.

7. As a driver for Big G, Jason Childress was insured under a policy of insurance that Big G purchased from Lincoln General. From the period of August 15, 2004 to June 1, 2005, he was covered by Lincoln General Policy No. 100820.

8. Big G executed a written rejection of uninsured motorist coverage with regard to Policy No. 100820 on August 15, 2004, a copy of which is attached hereto as Exhibit A.

9. Big G later applied for and was issued Lincoln General Policy No. 100891, which replaced Policy No. 100820.

10. Big G did not execute a rejection of uninsured motorist coverage with regard to Policy No. 100891.

11. Big G's failure to execute a written rejection of uninsured motorist coverage with regard to Policy No. 100891 left uninsured motorist coverage under that

2

policy in place in an amount equal to the liability limits. The liability limit of Policy No. 100891 was $1,000,000.00.

12. On September 5, 2005, while driving a truck for Big G in Virginia, Jason Childress was run off the road by an unknown driver and killed.

13. Lincoln General Policy No. 100891 was in effect at the time of Jason Childress' fatal accident. Uninsured motorist coverage under Policy No. 100891 was in effect. Therefore, Jason Childress, or more properly, his estate, became entitled to benefits under the uninsured motorist provisions of Policy No. 100891 in an amount sufficient to compensate Jason Childress and/or his estate for his injuries and death, not to exceed $1,000,000.00.

14. After the accident, Martha Childress, individually and as next friend and personal representative of Jason Childress, filed suit in the Circuit Court for Augusta County, Virginia against the unknown driver of the truck which ran Jason Childress off the road. She properly served Lincoln General as uninsured motorist carrier.

15. While the Virginia state action was pending, Lincoln General hired Tennessee counsel and filed Case No. 4:08-cv-23 in the United States District Court for the Eastern District of Tennessee, seeking a declaration that it owed no uninsured motorist coverage as a result of Jason Childress' accident.

16. In its complaint, Lincoln General relied on the document attached hereto as Exhibit A, which is the uninsured motorist rejection form with regard to Policy No. 100820. It did not attach any rejection form with regard to Policy No. 100891, the policy in force at the time of Jason Childress' accident.

3
15360/3/3427185v2
Case 4:11-cv-00007-HSM-SKL   Document 1   Filed 01/18/11   Page 3 of 16   PageID #: 3

17. In the course of the litigation, Lincoln General produced, and claimed to rely on, the document attached hereto as Exhibit B. On its face, this document appears to be an uninsured motorist coverage rejection form with regard to Policy No. 100891. However, even a cursory examination reveals that the document is fraudulent. The document was created by making a copy of the rejection form for the earlier policy, and changing the policy number and date. The signature of the Big G representative on both rejection forms is identical. Exhibit B, a document that Lincoln General relied on in rejecting coverage, and in filing Case No. 4:08-cv-23, is simply a fake document.

18. Agents or employees of Lincoln General created the document attached as Exhibit B in an attempt to avoid uninsured coverage under Policy No. 100891. Upon information and belief, the document was created after litigation began.

19. Alternatively, if Lincoln General's agents or employees did not create the document attached as Exhibit B, Lincoln General nonetheless held the document out as genuine when it knew that the document is not genuine.

20. Ms. Childress asked Lincoln General, by way of interrogatories and requests for admission, to state the basis for the claim that uninsured motorist coverage was rejected under the policy in place at the time of Jason Childress's death, Policy No. 100891.

21. Lincoln General answered discovery by claiming that it based its decision to deny coverage in part on the rejection attached as Exhibit A, the rejection for Policy No. 100820. As a matter of law, this rejection has no effect on Policy No. 100891.

22. Lincoln General also claimed that it based its denial of coverage on "the intent of the parties" and "testimony" from employees of Big G.

23. As a matter of Tennessee law, any rejection of uninsured coverage must be in writing. Thus, Lincoln General was not able to rely on "intent" and "testimony."

24. When asked to admit that Exhibit B is a fraudulent document, and was created by changing the date and policy number on the earlier rejection form, Lincoln General denied this.

25. When given an opportunity to admit that the two rejection forms are identical, except that the date and policy number have been changed on Exhibit B, Lincoln General denied these facts, despite knowing that the facts are true.

26. Lincoln General ultimately admitted, however, that there was no rejection of coverage form signed with regard to Policy No. 100891.

27. Big G never rejected uninsured motorist coverage under Policy No. 100891. Lincoln General knew this. Lincoln General never had a valid rejection form in its possession. Under Tennessee law, unless the insured executes a written rejection of uninsured coverage, uninsured coverage exists in an amount equal to the policy limits. Lincoln General knew this as well.

28. Lincoln General had no good-faith basis for the denial of uninsured coverage. Each of its reasons for denial were without legal and factual merit.

29. Nevertheless, even though it had no probable cause, and indeed no good-faith basis to do so, Lincoln General instituted litigation in federal court in Tennessee in an attempt to escape its responsibility to provide coverage. It chose Tennessee in an effort to burden Ms. Childress, a widowed mother living hundreds of miles away, in Virginia. It did so with malice, both actual and inferred from the lack of probable cause.

5
15360/3/3427185v2
Case 4:11-cv-00007-HSM-SKL   Document 1   Filed 01/18/11   Page 5 of 16   PageID #: 5

30. Martha Childress was forced to expend thousands of dollars in attorney's fees and costs in an effort to secure the uninsured motorist coverage that never should have been denied. Her total costs and fees in litigating Case No. 4:08-cv-23 exceed $60,000.00.

31. Further, Ms. Childress was forced to endure significant anxiety and emotional turmoil. She was sued in a foreign state by an insurance company over the death of her own husband, and was forced to participate in litigation for many months to secure benefits that never should have been denied.

32. On November 13, 2009, over a year and a half after Case No. 4:08-cv-23 was filed, Martha Childress was able to file a Motion for Summary Judgment seeking a ruling that Lincoln General did not, and had not, had a basis to deny coverage, and that uninsured motorist coverage in the amount of $1,000,000.00 existed under Policy No. 100891 and was available as compensation for Jason Childress' injuries and death. In her motion, she pointed out that the rejection form upon which Lincoln General first denied coverage (Exhibit A) related to Policy No. 100820, which was not even in effect at the time of the accident. She also pointed out that the purported later rejection form (Exhibit B) was clearly a fake.

33. Ms. Childress demonstrated that there was no question of fact, and that she was entitled to judgment in her favor as a matter of law.

34. Martha Childress also disclosed the report of an expert forensic document investigator, a portion of which is attached hereto as Exhibit C. The report is irrebuttable proof that the rejection for Policy No. 100891 is a fake.

35. When the time came for Lincoln General to respond to the Motion for Summary Judgment, it could not do so. Its attorneys admitted that it was unable to even create a triable question of fact as to whether uninsured coverage had been rejected.

36. Accordingly, Lincoln General gave up on the issue. It agreed to let summary judgment on the merits enter against it. After further discussions between counsel for Lincoln General and counsel for Ms. Childress, Ms. Childress withdrew her Motion for Summary Judgment so that Lincoln General could dismiss its claims on the merits with prejudice. It did so via order entered February 3, 2010. (Exhibit D.)

37. When Lincoln General's fraud was revealed, Ms. Childress sought and was granted permission to file a counterclaim against Lincoln General. Ms. Childress voluntarily dismissed her Counterclaim, without prejudice, on February 12, 2010. To the extent necessary, this action represents a re-filing of the Counterclaim pursuant to the provisions of the Tennessee savings statute.

38. Ms. Childress offered no consideration of any kind to Lincoln General in exchange for its dismissal of its claims with prejudice. This dismissal was not part of a settlement or a procedural victory, but rather termination of Case No. 4:08-cv-23 on its merits in a manner favorable to Ms. Childress.

39. Subsequently, the Virginia state court case against the unknown driver resumed, and was scheduled for trial on December 2, 2010. Lincoln General made no effort to deny coverage, and indeed its Virginia attorneys acknowledged that no defense to coverage exists. (Exhibit E.) Lincoln General defended the action on the merits, because it recognized that it has a duty to provide uninsured motorist benefits in an

15360/3/3427185v2

amount sufficient to compensate Jason Childress and/or his estate for his injuries and death.

40. On October 18, 2010, Lincoln General settled the Virginia action by agreeing to pay $475,00.00 in uninsured motorist benefits to Ms. Childress, and it paid these funds in November, 2010.

### III. Causes of Action

#### A. Breach of Contract

41. Jason Childress was an insured and a beneficiary of the contract of insurance between Lincoln General and Big G.

42. Uninsured motorist coverage was not declined with regard to Policy 100891. Nevertheless, Lincoln General, in bad faith, refused to provide coverage, based in part on a fraudulent document.

43. By denying coverage and pursuing its claims in Case No. 4:08-cv-23, Lincoln General breached the contract of which Jason Childress was a beneficiary, and of which his Estate remains a beneficiary.

44. Lincoln General is liable for all incidental and consequential damages resulting from its breach of contract, including the costs incurred by Martha Childress to defend against the declaratory judgment action and to pursue this action, and the loss of use of the funds Lincoln General ultimately paid from the date of the filing of the Virginia action until November, 2010, when $475,000.00 in benefits were ultimately paid.

45. The elements of breach of contract under Tennessee law are:

    a. the existence of a contract;

Case 4:11-cv-00007-HSM-SKL   Document 1   Filed 01/18/11   Page 8 of 16   PageID #: 8

  b. non-performance amounting to a breach of that contract; and

  c. damages caused by the breach of contract.

46. For the purpose of forestalling a meritless argument that Plaintiff has not alleged sufficient facts in this Complaint to state a claim for breach of contract, Plaintiff alleges, in addition to all the other allegations herein, as follows:

  a. A contract existed between Plaintiff and Lincoln General, mainly, the contract of insurance which was Lincoln General Policy No. 100891.

  b. Under that contract, Jason Childress, and his estate, were entitled to uninsured motorist coverage.

  c. Lincoln General engaged in non-performance amounting to a breach of that contract when it denied coverage without any basis to do so and, instead of paying the benefits, sued Ms. Childress seeking a declaration that no benefits were owed. It lost this claim on the merits, and conceded that it did owe the benefits.

  d. Despite the fact that Lincoln General, after losing the declaratory judgment action filed, conceded that benefits were owed, its breach still caused damage to Ms. Childress by forcing her to incur costs and fees in defending the declaratory judgment action and by denying her the use of the funds while it prosecuted, and ultimately lost, the declaratory judgment action.

47. The intentional, reckless, fraudulent, and egregious nature of the breach renders Lincoln General liable for punitive damages.

48. To the extent necessary, this claim represents a re-filing of Martha Childress' claim of breach of contract, which was set out in her Counterclaim in Case No. 4:08-cv-23, and which was voluntarily dismissed without prejudice on February 12, 2010.

### B. Violation of the Tennessee Consumer Protection Act

49. Jason Childress, and now his Estate, as well as Martha Childress are "consumers" within the meaning of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 et. seq.

50. Lincoln General's denial of uninsured coverage under the circumstances described herein was a deceptive and unfair practice, and is a violation of the Tennessee Consumer Protection Act.

51. Lincoln General is liable to Ms. Childress for her actual damages, treble damages and/or punitive damages and attorney's fees.

52. The elements of a private cause of action under the Tennessee Consumer Protection Act are:

    (a)    the use or employment by the defendant of an unfair or deceptive act or practice declared to be unlawful by the Act; and

    (b)    a resulting ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.

15360/3/3427185v2

53. For the purpose of forestalling a meritless claim that Plaintiff has failed to allege specific facts sufficient to state a claim of violation of the Tennessee Consumer Protection Act, Plaintiff alleges, in addition to all the other allegations herein, as follows:

    (a) Lincoln General used and employed an unfair and deceptive act declared to be unlawful by the Act when it filed and prosecuted Case No. 4:08-cv-23 and when it created and/or relied on the fake rejection form attached as Exhibit B.

    (b) This unfair and deceptive act caused an ascertainable loss of money to Martha Childress and the Estate of Jason Childress, as described herein.

54. To the extent necessary, this claim represents a re-filing of Martha Childress' claim of violation of the Tennessee Consumer Protection Act, which was set out in her Counterclaim in Case No. 4:08-cv-23, and which was voluntarily dismissed without prejudice on February 12, 2010.

### C. Malicious Prosecution

55. Lincoln General is liable to Ms. Childress for the malicious prosecution of Case No. 4:08-cv-23.

56. Case No. 4:08-cv-23 was instituted by Lincoln General without probable cause. The rejection form Lincoln General attached to its Complaint, Exhibit A, is not even related to the policy in force at the time of the accident. Lincoln General had no good faith basis or probable cause to seek a declaration that it did not owe uninsured benefits based on Exhibit A.

57. Exhibit B, the fake rejection form which bears Policy No. 100891, was created by Lincoln General in a fraudulent and dishonest attempt to escape its duty to provide uninsured coverage. Lincoln General has no good-faith basis or probable cause to deny coverage based on Exhibit B. The document is fake, and Lincoln General knew it.

58. Lincoln General offered no other legally cognizable basis for the denial of coverage.

59. Lincoln General knew, or should have known, that, under clear Tennessee law, failure of the insured to execute a rejection of uninsured motorist coverage means that uninsured motorist coverage exists in an amount equal to the liability limits. It knew that no rejection form had been executed with regard to Policy No. 100891. It knew that Big G had submitted an application for Policy No. 100891, and that this prevented any reliance on the rejection form with regard to the prior policy. In short, it knew that it was bound to provide uninsured coverage as a result of Mr. Childress' accident.

60. Nevertheless, acting without probable cause, with malicious intent, and with no cognizable legal basis whatsoever, it instituted litigation in federal court in a forum hundreds of miles away from Ms. Childress, all in a bad-faith effort to escape its clear responsibility to provide coverage.

61. Ms. Childress was substantially damaged by this litigation, not only in the form of the attorney's fees and costs which she incurred, but by being made to endure the uncertainty and mental anguish that resulted from having been sued in Tennessee over her own husband's death.

12

62. When Ms. Childress uncovered Lincoln General's fraud, and filed her Motion for Summary Judgment, Lincoln General utterly conceded and abandoned its claims. It acknowledged that it was unable to respond to the Motion for Summary Judgment, and, once Ms. Childress withdrew her motion so that Lincoln General could do so pursuant to Rule 41, Lincoln General voluntarily dismissed its claims with prejudice. This represents a termination of Case No. 4:08-cv-23 in Martha Childress' favor.

63. Had Lincoln General not instituted Case No. 4:08-cv-23 without probable cause, there would not have been a 19-month delay in moving forward with the underlying Virginia action, and a 20-month delay in receiving the uninsured motorist benefits. Ms. Childress has been damaged by this delay.

64. The elements of a claim of malicious prosecution in Tennessee are:

   a. that a prior lawsuit or judicial proceeding was brought against the Plaintiff without probable cause;

   b. that the prior lawsuit or judicial proceeding was brought against the Plaintiff with malice; and

   c. that the prior lawsuit or judicial proceeding terminated in the Plaintiff's favor.

65. For the purpose of forestalling a meritless claim that Plaintiff has failed to allege specific facts sufficient to support a cause of action for malicious prosecution, Plaintiff alleges, in addition to all other allegations herein, as follows:

   a. Lincoln General brought a prior lawsuit against Plaintiff without probable cause when it instituted the declaratory judgment action

13
15360/3/3427185v2
Case 4:11-cv-00007-HSM-SKL   Document 1   Filed 01/18/11   Page 13 of 16   PageID #: 13

against Ms. Childress seeking a declaration that it owed no coverage despite the fact that Lincoln General knew, or should have known, that coverage did in fact exist and that there was no basis for its denial or any facts sufficient to support a belief in the mind of a reasonable person that there was a basis for the denial.

b. Lincoln General brought the declaratory judgment action against Ms. Childress with malice, because it did so without probable cause, and malice is therefore inferred. Additionally, Lincoln General's malice is obvious in the fact that it filed the action in a distant forum hoping that Ms. Childress' counsel could not represent her there. Lincoln General's malice is also demonstrated by its attempt to rely on the rejection form which it or its agents created after litigation began in an effort to fabricate a basis to design coverage.

c. The declaratory judgment action terminated in Ms. Childress' favor. In response to her Motion for Summary Judgment, Lincoln General's attorneys admitted that they were unable to create a question of fact and agreed to let summary judgment on the merits entered against Lincoln General. The lawsuit was ultimately resolved when Lincoln General agreed to dismiss its claims on the merits, with prejudice, and received no consideration whatsoever from Ms. Childress in exchange for doing so. The declaratory judgment action was concluded on its merits, in a way that was

15360/3/3427185v2
Case 4:11-cv-00007-HSM-SKL   Document 1   Filed 01/18/11   Page 14 of 16   PageID #: 14

inconsistent with the existence of any probable cause to bring the case. Ms. Childress' Motion for Summary Judgment was not based on any procedural ground, but attacked the merits of Lincoln General's claim. Lincoln General conceded that it could not meet the Motion for Summary Judgment, and agreed to dismiss its claims on the merits.

66. Ms. Childress is entitled to compensatory damages as a result of the malicious prosecution, as well as punitive damages as a result of Lincoln General's intentional, reckless, and fraudulent conduct.

**WHEREFORE**, Martha Childress demands the following relief:

1. the process issue for Defendant;

2. that this matter be tried to a jury of 12 persons;

3. a finding that Lincoln General is liable to Ms. Childress for breach of contract, violation of the Tennessee Consumer Protection Act, and the malicious prosecution of United States District Court Case No. 4:08-cv-23;

4. an award of compensatory damages, treble damages, and punitive damages in an amount not less than $1,000,000.00;

5. an award of Ms. Childress' attorney's fees and costs incurred in this action; and

6. all other and further relief to which she is entitled.

Respectfully submitted this 13th day of January, 2011.

>/s/ Travis J. Graham
> Travis J. Graham (TN BPR No. 019402)
> GENTRY LOCKE RAKES & MOORE LLP
> 800 SunTrust Plaza
> P.O. Box 40013
> Roanoke, VA 24022
> Phone: (540) 983-9300
> Fax: (540) 983-9400
> travis_graham@gentrylocke.com